UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kitda Machelle Listug,  Civil No. 14-386 (DWF/SER)

    Plaintiff,

v.  **MEMORANDUM OPINION AND ORDER**

Molina Information Systems, LLC,

    Defendant.

___

Gerald T. Laurie, Esq., and Ian S. Laurie, Esq., Laurie & Laurie, PA, counsel for Plaintiff.

Mary M.L. O'Brien, Esq., and R. Henry Pfutzenreuter, Esq., Meagher & Geer, PLLP, counsel for Defendant.

___

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Molina Information Systems, LLC d/b/a Molina Medicaid Solutions ("MMS" or "Defendant").[1]

---

[1] Molina Healthcare, Inc. ("Molina") was named as the defendant in the original Complaint. (Doc. No. 1, Ex. 1 ("Compl.").) On March 5, 2014, Plaintiff filed an Amended Complaint, which asserts claims against MMS, instead of its parent company, Molina. (Doc. No. 10 ("Am. Compl.").) Defendant submits that its counsel represents both entities, that MMS joins the motion to dismiss, and that all facts and arguments apply equally to both companies. (Doc. No. 16 at 1 n.1.)
    MMS is a West Virginia based subsidiary of Molina. (Doc. No. 7 ("Panepinto Aff.") ¶ 6.) Plaintiff was employed by MMS. (Doc. No. 14 ("Listug Aff.") ¶ 1.) The Court refers to MMS as Defendant since MMS is the only named defendant in the Amended Complaint and Plaintiff acknowledges that she worked for MMS.

(Doc. No. 3.) For the reasons set forth below, the Court denies the motion and transfers this action to the Southern District of West Virginia pursuant to 28 U.S.C. § 1631.

## BACKGROUND

Molina is a multi-state health care organization that assists individuals and families who receive care through Medicaid, Medicare, and other government-funded programs. (Compl. ¶ 2; Am. Compl. ¶ 2; Panepinto Aff. ¶ 3.) Molina is incorporated in Delaware and has its primary place of business in California. (Panepinto Aff. ¶ 2.) MMS is a West Virginia subsidiary of Molina, licensed to do business in West Virginia. (*Id.* ¶¶ 4, 6.) Defendant claims that it does not conduct business in Minnesota. (*Id.* ¶¶ 5, 7.)[2]

Plaintiff is a resident of Brooklyn Park, Minnesota. (Compl. ¶ 1; Am. Compl. ¶ 1.) Plaintiff alleges that she has extensive experience in the health care industry and in developing Medicaid systems in various states. (Compl. ¶ 3; Am. Compl. ¶ 5.) Plaintiff

---

[2] Plaintiff alleges that Molina does business with Medication Management Systems, a Minnesota business with a home office in Golden Valley, Minnesota. (Doc. No. 15 ("Laurie Aff.") ¶¶ 2, 3, Exs. A, B.) The evidence submitted indicates that Medication Management Systems entered into a business relationship with "Molina Healthcare, Inc.," whereby "Medication Management Systems will work with Molina Healthcare to define quality medication management services for its Part D members" and further acknowledges that Molina Healthcare "conducts its business primarily through licensed health plans in the states of California, Florida, Michigan, Missouri, New Mexico, Ohio, Texas, Utah and Washington." (*Id.* ¶ 2, Ex. A.) This evidence does not demonstrate that MMS provides services in the state of Minnesota. Defendant maintains that neither Molina nor MMS conducts business in Minnesota. (Panepinto Aff. ¶¶ 5, 7.)

was hired by MMS on April 1, 2013, as a Design, Development and Implementation ("DDI") coordinator. (Compl. ¶ 7; Am. Compl. ¶ 7; Listug Aff. ¶ 1.)[3]

Plaintiff contends MMS initiated contact with her by e-mailing her on January 23, 2013 to recruit her for the position at MMS. (Listug Aff. ¶¶ 3, 4, Ex. A.) The e-mail reads: "My name is Bob Bates and Kirk recommended you to me? If you are interested in a new opportunity, can you call me after 4PM EST either today or tomorrow?" (*Id.*) Defendant asserts that MMS never recruited Plaintiff and has put forth evidence that it maintains a website open to all internet users that lists open positions. (Panepinto Aff. ¶ 10.) Defendant further alleges that Plaintiff reached out to MMS based on a recommendation of one of her friends. (*Id.* ¶ 11.) Defendant also claims that none of its employees met with Plaintiff in Minnesota during the hiring process. (*Id.*) Plaintiff does not allege otherwise.

While working for MMS, Plaintiff provided project management services in connection with MMS's contract with the state of West Virginia to design, develop, and implement its Medicaid management information system. (Compl. ¶ 4; Am. Compl. ¶ 7; Panepinto Aff. ¶ 9.) As an employee of MMS, Plaintiff retained her principal residence in Minnesota, returned to Minnesota most weekends to see her family, and often worked from Minnesota on Mondays. (Am. Compl. ¶ 9.) Plaintiff alleges that she worked from Minnesota approximately twenty percent of the time and that she paid Minnesota (not

---

[3]   MMS asserts that Plaintiff was hired as a "Technical Project Manager." (Panepinto Aff. ¶ 9.)

3

West Virginia) income taxes. (*Id.*) Plaintiff asserts that she was classified as a "remote employee" at MMS. (Am. Compl. ¶ 8.) Defendant acknowledges that Plaintiff was allowed to work from Minnesota occasionally, but contends that she was not required to do so. (Panepinto Aff. ¶ 2.) Defendant has submitted evidence that its contract with the state of West Virginia provides that the position for which Plaintiff was hired was "envisioned to be located onsite at the Bureau 100%" in West Virginia through the design, development, and implementation stage. (*Id.* ¶ 13, Ex. A.)

Plaintiff alleges that Defendant withheld $2,803.01 from her salary to pay state income taxes in Minnesota, and registered with the state of Minnesota to do so. (Listug Aff. ¶¶ 7-8, Ex. C.) Defendant contends that it does not incur or pay any tax obligations of its own in Minnesota.

Plaintiff filed this action in Minnesota state court on January 8, 2014, and served the Complaint on Molina on January 23, 2013. (Doc. No. 1 ("Notice of Removal") ¶ 1; Compl.) Defendant removed the action to this Court on February 12, 2014. (*Id.*) In this action, Plaintiff asserts three causes of action: (1) sex discrimination under the Minnesota Human Rights Act ("MHRA"); (2) reprisal in violation of the MHRA; and (3) intentional infliction of emotional distress. (Am. Compl. ¶¶ 28-40.) Plaintiff's claims against Defendant all arise from alleged discrimination and unsafe workplace practices that occurred exclusively in West Virginia. While not relevant to the present motion, the Court notes that the allegations of discrimination in Plaintiff's Complaint, if proven to be true, paint a shocking picture of the workplace conditions at Defendant's West Virginia Office.

Defendant now moves to dismiss this action based on a lack of personal jurisdiction or, in the alternative, improper venue.

## DISCUSSION

**I.      Personal Jurisdiction**

When a defendant challenges personal jurisdiction, the plaintiff has the burden of showing that personal jurisdiction exists. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Id.*; *Digi-Tel Holding, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings: "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (citation omitted). For the purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Northrup King*, 51 F.3d at 1387. The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process,

5

and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 297 (1980). It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether a defendant's contacts with the forum state establish personal jurisdiction. *Epps*, 357 F.3d at 648. In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citing *Int'l Shoe Co.*, 326 U.S. at 317). Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

6

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003). The third factor distinguishes between specific and general jurisdiction. *Id.*

When viewing the evidence in the light most favorable to Plaintiff, the record establishes that Defendant is not subject to jurisdiction within Minnesota. First, the Court finds that it lacks specific jurisdiction over Defendant. In particular, Plaintiff has failed to establish a prima facie showing that Defendant "purposely directed" its activities in Minnesota or that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472). The only contacts related to the cause of action are isolated communications with Plaintiff when Defendant hired Plaintiff to work for it in its West Virginia office. These communications are insufficient to confer jurisdiction. *See, e.g.*, *Lucachick v. NDS Americas, Inc.*, 169 F. Supp. 2d 1103, 1107 (D. Minn. 2001) (explaining that negotiations conducted over the telephone are not enough to confer jurisdiction); *Farris v. Williams*, Civ. No. 06-609, 2006 WL 1716285, at *3 (D. Minn. June 21, 2006) (same). Moreover, the record shows that Plaintiff was permitted, but not required, to work from home in

7

Minnesota on occasion. Plaintiff's decision to work from home in Minnesota does not confer jurisdiction. *See, e.g.*, *Cafesjian v. Armenian Assembly of Am., Inc.*, Civ. No. 07-2079, 2008 WL 906194, at *10 (D. Minn. Mar. 31, 2008) (citing *Lucachick*, 169 F. Supp. 2d at 1107) ("An agent's decision to work from home in the forum state generally does not bind an entity to personal jurisdiction in that state where the purpose of the arrangement is merely for the agent's personal convenience."). Finally, Plaintiff's claims against Defendant relate to alleged discriminatory practices that occurred exclusively in West Virginia. The Court concludes that Defendant's contacts with Minnesota are not sufficient to show that Defendant purposefully availed itself of the privilege of conducting activities in Minnesota such that Defendant could "reasonably anticipate being haled into court" in Minnesota.[4]

Second, the Court concludes that Plaintiff has failed to establish a prima facie case supporting the exercise of general jurisdiction. Plaintiff has failed to demonstrate that Defendant conducted business in Minnesota or has established a business presence in Minnesota. There is evidence that Molina (not MMS) has a business relationship, in some capacity, with a Minnesota business, but that evidence also indicates that Molina "conducts its business primarily through licensed health plans in the states of California,

---

[4] Plaintiff also argues that Defendant availed itself of the benefits and privileges of Minnesota law by withholding her Minnesota income tax from her paycheck. Plaintiff suggests that by withholding her taxes, Defendant itself paid taxes in Minnesota and thus has sufficient contacts with Minnesota to support jurisdiction. The Court disagrees. The withholding of taxes was of Plaintiff's tax obligation, not Defendant's, and therefore does not show purposeful availment.

8

Florida, Michigan, Missouri, New Mexico, Ohio, Texas, Utah and Washington." (*Id*. ¶ 2, Ex. A.) There is no evidence that Defendant markets or sells its services, pays its own taxes, or has offices in Minnesota. Based on a review of the record, the Court finds that Defendant does not have continuous and systematic contacts with Minnesota such that general jurisdiction exists in this case.

The Court acknowledges that Plaintiff, as a Minnesota resident, was allegedly discriminated against, and it is certainly in the interest of Minnesota to provide a forum for Plaintiff's lawsuit. However, because the interests of the forum state are accorded less weight by the Court, they are not sufficient to establish jurisdiction alone. And while Plaintiff may benefit from the Court exercising jurisdiction, most witnesses and evidence are located outside of Minnesota.

For the reasons discussed above, the Court concludes that the Court lacks personal jurisdiction over Defendant.

**II. Venue**

Defendant asserts that venue in this district is improper. Under 28 U.S.C. § 1391(a), venue in cases based on diversity is only appropriate in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). When a defendant seeks dismissal for improper venue, it bears the burden of demonstrating that the plaintiff's chosen venue is improper. *See United States*

*v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947). Based on the discussion above, the Court concludes that Minnesota is an improper venue. Defendant does not reside in the District of Minnesota, none of the events giving rise to the claim occurred in Minnesota, and the Court does not have jurisdiction over Defendant in Minnesota.

### III.   28 U.S.C. § 1631

Defendant also moves, in the alternative, to transfer this action to the Southern District of West Virginia pursuant to 28 U.S.C. § 1404(a). Because the Court finds that there are insufficient contacts to support the exercise of jurisdiction over Defendant in Minnesota, the motion to transfer is moot. Even so, the Court finds that the interests of justice warrant transfer of this action to the Southern District of West Virginia.

Section 1631 permits federal courts to transfer an action in order to cure a want of jurisdiction. 28 U.S.C. § 1631. To determine whether a § 1631 transfer is appropriate, the Court must find: (1) a want of jurisdiction; (2) that the interests of justice support a transfer; and (3) that the action could have been brought in the transferee court at the time it was filed. *Id*. The Court finds all three factors are satisfied in this case. The Court, therefore, directs the Clerk of Court to transfer this action to the Southern District of West Virginia where jurisdiction undoubtedly rests.

### CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1.   Defendant's Motion to Dismiss (Doc. No. [3]) is **DENIED**.

  2. The Court directs the Clerk of Court to effect the transfer of this action to the Southern District of West Virginia pursuant to 28 U.S.C. § 1631.

Dated: August 8, 2014        <u>s/Donovan W. Frank</u>
                 DONOVAN W. FRANK
                 United States District Judge